UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRELL GUNN,

                Plaintiff,

           -against-

DR. ROBERT V. BENTIVEGNA, F.H.S.D.;
MS. HENNESSY, MHU Unit Chief;
CHRISTINE RAFFAELE, Registered Nurse,
NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION,

                Defendants.

1:20-CV-2440 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

       Plaintiff, currently incarcerated in the Sing Sing Correctional Facility, brings this *pro se* action alleging that the defendants violated his federal constitutional rights. He asserts claims under 42 U.S.C. § 1983 and state law. He sues (1) Dr. Robert V. Bentivegna, the Facility Health Service Director of the Green Haven Correctional Facility, (2) Ms. Hennessy, the Mental Health Unit Chief at that facility, (3) Christine Raffaele, a nurse assigned to that facility, and (4) the New York State Department of Corrections and Community Supervision ("DOCCS"), which operates that facility. Plaintiff seeks damages and declaratory relief. He sues the individual defendants in their official and individual capacities.

       By order dated May 8, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*.[1] For the reasons discussed below, the Court

---

[1] Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

dismisses this action, but grants Plaintiff leave to replead certain claims in an amended complaint to be filed within 30 days of the date of this order.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court

must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 678-79.

## BACKGROUND

Plaintiff alleges the following facts: On July 28, 2017, while Plaintiff was incarcerated in the Green Haven Correctional Facility, he sought medical treatment from Raffaele, a nurse. But Raffaele "became repulsive, . . . insensitive, [and] upset, and act[ed] irate towards [him, and gave him] a hard time . . . ." (ECF 2, at 4.) She asked him, "why are you here at sickcall," and then told him, "I sent you a letter. You should not be coming to sickcall!" (*Id.*) Plaintiff told Raffaele that he was in pain, was losing his hearing, and needed pain medication. He also asked to speak to Hennessy, the Mental Health Unit Chief.

DOCCS officials, including Dr. Bentivegna, had previously referred Plaintiff to "sickcall," that is, they had told him to seek medical treatment. But Raffaele was frustrated that Plaintiff was seeking medical treatment. She stated that she was going to "'steal someone's water.'" (*Id.*) Raffaele then gave Plaintiff a "Styrofoam cup with someone's water she stole[] from an abandon[ed] prison guard one gallon jug that she found sitting on [a] table." (*Id.*) She gave Plaintiff a "non-aspirin packet" and "the foul tasting unhygienic water [so that he could] swallow the two non-aspirins." (*Id.* at 5.) Raffaele did this to retaliate against Plaintiff for "coming to sickcall, and filing grievances[] and lawsuits." (*Id.*)

To protest Raffaele's actions, Plaintiff went on a hunger strike. The "unsafe water" and "needless medication" Raffaele gave him caused him "to have [an] upset stomach, loss of appetite, n[a]usea, fear, high levels of stress, worrying, depression, anxiety, [and] emotional and

psychological injury." (*Id.* at 5-6.) When he began his hunger strike, Plaintiff was held in the Green Haven infirmary. But on August 7, 2017, he was released from the infirmary, and two days later, he was confined to his cell for a "72 hour cell confinement investigation." (*Id.* at 6.) On August 14, 22, and 24, 2017, while Plaintiff was still on his hunger strike, officials denied him medical treatment. On August 24, 2017, he was escorted to Green Haven's psychiatric satellite unit, but officials there "refused to help" him; Hennessy "laughed at [him] the whole time she responded to [his] problems [sic]." (*Id.* at 7.) One day later, he was allowed to go to sickcall, but was not allowed to be examined by a physician or speak to a mental-health professional.

During his hunger strike, Plaintiff was forced to wear "a sack as clothing in an isolation cell." (*Id.*) His hunger strike "was not being properly treated according to policy and procedure of DOCCS Departmental Directive #4309 by . . . Bentivegna . . . and . . . Hennessy, . . . dereliction of duty and negligence, who lacking integrity, accountability, no responsibility, and zero transparency, has no respect for the rule of law causing [P]laintiff's civil rights being infringed upon [sic]." (*Id.*)

## DISCUSSION

### A.      DOCCS and official-capacity claims

Plaintiff's claims under 42 U.S.C. § 1983 against DOCCS are barred by the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst*

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks and citation omitted). Thus, this immunity bars claims under § 1983 for damages against state officials in their official capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

Congress has not abrogated the States' immunity for claims under § 1983. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). And the State of New York has not waived its immunity to suit in federal court. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). DOCCS, as an arm of the State of New York, enjoys Eleventh Amendment immunity from suit under § 1983. *See, e.g.*, *Madison v. New York State Dep't of Corrs*. No. 19-CV-3401, 2019 WL 4933594, at *1-2 (S.D.N.Y. Oct. 4, 2019). And DOCCS officials enjoy Eleventh Amendment immunity from suit under § 1983 for damages in their official capacities. *See, e.g.*, *Marshall v. Lilley*, No. 19-CV-11829, 2020 WL 905989, *6 (S.D.N.Y. Feb. 21, 2020). Accordingly, the Court dismisses Plaintiff' claims under § 1983 against DOCCS, as well as his claims under § 1983 for damages against the individual defendants (who are all DOCCS employees) in their official capacities, under the doctrine of Eleventh Amendment immunity.[2] *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

---

[2] *See also Zuckerman v. Appellate Div., Second Dep't, Supreme Court*, 421 F.2d 625, 626 (2d Cir. 1970) (holding that a state court is not a "person" for the purpose of § 1983 liability); *see generally Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding that a state agency is not a "person" for the purpose of § 1983 liability).

**B.     DOCCS Directive #4309**

Plaintiff alleges that the individual defendants violated his federal constitutional rights by not following DOCCS Directive #4309. But an official's failure to follow a prison directive does not constitute a violation of a prisoner's federal constitutional rights. *See Holcomb v. Lykens*, 337 F.3d 217, 224-25 (2d Cir. 2013) (holding that a state corrections directive did not create a liberty interest protected by the Due Process Clause); *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[T]he law is settled that failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim."); *see also McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir. 1990) (rejecting the plaintiff's claim that his right to due process was violated by a New York City agency's failure to follow the City's Administrative Code); *Morton v. Cnty. of Erie*, 335 F. Supp. 3d 449, 455 n.2 (W.D.N.Y. Sept. 26, 2018) ("Section 1983 provides a cause of action for deprivation of federal, and not state, rights."), *aff'd*, 796 F. App'x 40 (2d Cir. 2019) (unpublished opinion).

The Court therefore dismisses Plaintiff's claims under § 1983 that the individual defendants violated his federal constitutional rights by not following DOCCS Directive #4309 for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**C.     State-law claims**

The Court must dismiss Plaintiff's claims under state law for damages. This Court lacks subject-matter jurisdiction to consider those types of claims against DOCCS, a state agency; they can only be brought in the New York Court of Claims against the State of New York. *See Gollomp*, 568 F.3d at 357 n.2 ("The New York Court of Claims is the exclusive forum among New York's state courts for litigating claims for money damages against New York State." (citing N.Y. Const. Art. VI, § 9, and  N.Y. Court of Claims Act § 8))). The Court therefore

dismisses Plaintiff's claims under state law for damages against DOCCS. *See* Fed. R. Civ. P. 12(h)(3).

Under Section 24 of the New York Correction Law, "[a]ny claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of [DOCCS] shall [also] be brought and maintained in the [New York] court of claims as a claim against the state." N.Y. Corr. § 24(2). Under this statute, DOCCS employees are immune from suit for claims under state law for damages arising from their actions or omissions that occurred within the scope of their DOCCS employment. *See* N.Y. Corr. § 24(1), (2); *Baker v. Coughlin*, 77 F.3d 12, 15-16 (2d Cir. 1996); *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 365-66 (S.D.N.Y. 2013) (dismissing such claims for lack of subject-matter jurisdiction).

In his complaint, Plaintiff asserts claims under state law for damages against individual DOCCS employees – the individual defendants. Those claims arise from the individual defendants' acts or omissions that occurred within the scope of their DOCCS employment. The Court therefore dismisses those claims. *See* § 1915(e)(2)(iii); Fed. R. Civ. 12(h)(3).

## D.    Failure to provide adequate medical or mental-health treatment

The Court understands Plaintiff's complaint as asserting that the individual defendants deprived Plaintiff of his Eighth Amendment right against cruel and unusual punishment by failing to provide him with adequate medical or mental-health treatment. A prisoner asserting this type of claim must allege facts showing that prison officials were deliberately indifferent to his serious medical or mental-health needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Darnell v. Pineiro*, 849 F.3d 17, 32-35 (2d Cir. 2017).

Deliberate indifference is evaluated under a two-pronged test comprised of both objective and "mental element" components.  *See Darnell*, 849 F.3d at 30-33; *Hill v. Curcione*, 657 F.3d

116, 122 (2d Cir. 2011). The objective component requires that the alleged medical or mental-health need be a sufficiently serious condition that "'could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Darnell*, 849 F.3d at 30 ("[T]o establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'") (citations omitted). The relevant inquiry is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical [or mental-health] condition . . . ." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702-03).

For the "mental element" component, a convicted prisoner must show that a prison official "kn[ew] of and disregard[ed] an excessive risk to [the prisoner's] health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Allegations of malpractice or the negligent failure to provide adequate medical or mental-health care do not state a constitutional claim. *See Estelle*, 429 U.S. at 106; *Chance*, 143 F.3d at 703.

Plaintiff alleges that he was in pain and was losing his hearing, and in response to his complaints about those conditions and his request for mental-health treatment, Raffaele gave him some type of medication and "unsafe water." (ECF 2, at 4-5.) He also alleges that during his hunger strike, prison officials denied him medical and mental-health treatment, and that when he was brought to Green Haven's psychiatric satellite unit for mental-health treatment, Hennessy

laughed at him "the whole time she responded to [his] problems." (*Id.* at 7.) But he fails to allege sufficient facts to suggest that any of the individual defendants were deliberately indifferent to his serious medical or mental-health needs. The Court therefore dismisses those claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). But the Court grants Plaintiff leave to replead those claims in amended complaint to be filed within 30 days of the date of this order.

**E.    Retaliation**

By stating that Raffaele gave him "needless medication" and "unsafe water" in retaliation for his previous requests for medical or mental-health treatment, his previous grievances, or his previous lawsuits (ECF 2, at 5), Plaintiff may be attempting to assert a claim under § 1983 that Raffaele violated his rights under the First Amendment.

To state a First Amendment claim of retaliation under § 1983, a prisoner must allege facts showing that "(1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted). An adverse action must be "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . . Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). A prisoner's claim of retaliation under § 1983 must be examined with skepticism because it is "'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted).

Plaintiff does not allege sufficient facts to state a claim under § 1983 that Raffaele retaliated against him. Even assuming that Plaintiff satisfies the first two pleading requirements, he has failed to allege any facts that suggest that there was a causal connection between his protected speech or conduct and Raffaele's purported adverse action against him (giving Plaintiff "needless medication" and "unsafe water" (ECF 2, at 5)), and that the adverse action was not *de minimis*. The Court therefore dismisses this claim of retaliation under § 1983 for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). But the Court grants Plaintiff leave to replead this claim in an amended complaint to be filed within 30 days of the date of this order.

## CONCLUSION

Chambers will mail a copy of the order to Plaintiff. The Court dismisses this action.

The Court dismisses Plaintiff's claims under 42 U.S.C. § 1983 against DOCCS, as well as his claims under § 1983 for damages against the individual defendants, in their official capacities, under the doctrine of Eleventh Amendment immunity. 28 U.S.C. § 1915(e)(2)(B)(iii).

The Court also dismisses Plaintiff's claims under § 1983 arising from the individual defendants' failure to follow DOCCS Directive #4309 for failure to state a claim on which relief may be granted. § 1915(e)(2)(B)(ii).

The Court further dismisses Plaintiff's claims for damages under state law. § 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3).

In addition, the Court dismisses Plaintiff's claims under § 1983 in which he alleges that the individual defendants failed to provide him with adequate medical or mental-health treatment for failure to state a claim on which relief may be granted. § 1915(e)(2)(B)(ii). And the Court dismisses his claim under § 1983 that Raffaele retaliated against him for the same reason. *Id.* But

the Court grants Plaintiff leave to replead these two types claims under § 1983 in an amended complaint to be filed within 30 days of the date of this order.

If Plaintiff fails to file an amended complaint within the time allowed, the Court will enter a judgment in which the Court dismisses this action for the reasons discussed in this order.

SO ORDERED.

Dated:   May 19, 2020
         New York, New York

                                          _Louis L. Stanton_
                                            Louis L. Stanton
                                                U.S.D.J.