UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRELL GUNN,

                                    Plaintiff,

                    v.

DR. ROBERT BENTIVEGNA, *et al*.,

                                    Defendants.

No. 20-CV-2440 (KMK)

OPINION & ORDER

Appearances:

Darrell Gunn
Ossining, NY
*Pro se Plaintiff*

Bruce J. Turkle, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Darrell Gunn ("Plaintiff"), proceeding pro se, brings this Action against New York State

Department of Corrections and Community Supervision ("DOCCS") employees Dr. Robert V.

Bentivegna and nurse Christine Raffaele as well as Ann Hennessey, an employee of the New

York State Office of Mental Health ("OMH," collectively "Defendants,") alleging violations of

his federal constitutional rights while incarcerated at Green Haven Correctional Facility ("Green

Haven.")  (Am. Compl. ("AC") (Dkt. No. 18).)[1]  Plaintiff asserts claims under 42 U.S.C. § 1983

and state law.  (*Id.*)  Plaintiff seeks compensatory and punitive damages.  (*Id.* ¶¶ 38–39.)  Before

---

        [1] Plaintiff is currently incarcerated at Sing Sing Correctional Facility.  (*See* Dkt. Report.)

the Court is Defendants' Motion To Dismiss the Amended Complaint (the "Motion").  (*See* Not. of Mot. (Dkt. No. 23).)   For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are assumed true for the purpose of resolving the instant Motion.

On July 28, 2017, while Plaintiff was incarcerated in the Green Haven Correctional Facility, where he sought medical treatment from Raffaele, a nurse.  (AC ¶ 6.)  But Raffaele "became repulsive and insensitive, upset and act[ed] irate towards [him, and gave him] a hard time . . . ."  (*Id.*)  Raffaele asked him, "why are you here at sickcall!" and then told him, "I sent you a letter.  You should not be coming to sickcall!"  (*Id.*)  Plaintiff told Raffaele that he was in pain, was losing his hearing, and needed pain medication.  (*Id.* ¶ 7.)  He also asked to speak to Hennessy, the Mental Health Unit Chief.  (*Id.*)  DOCCS officials, including Dr. Bentivegna, had previously referred Plaintiff to sickcall for medical treatment.  (*Id.* ¶ 9.)  But Raffaele was frustrated that Plaintiff was seeking medical treatment.  (*Id.* ¶ 10.)  Raffaele stated that she was going to "'steal someone's water.'"  (*Id.*)  Raffaele then gave Plaintiff a "Styrofoam cup with someone's water she stole[] from an abandon[ed] prison guard one gallon water jug that she found sitting on [a] table."  (*Id.* ¶ 11.)  Raffaele subsequently gave Plaintiff a "non-aspirin packet."  (*Id.* ¶ 12.)  Raffaele was "ingeniously deceptive" and attempted to "create[] an illusion" giving Plaintiff proper medical treatment.  (*Id.* ¶¶ 12–13.)  Plaintiff drank the "foul tasting unhygienic water, in order to swallow the two non-aspirin[s]."  (*Id.* ¶ 14.)  Raffaele used an "improper medical procedure" which resulted in Plaintiff "needlessly consum[ing] two non-aspirins during sickcall, in order to commit an unhygienic act against [P]laintiff."  (*Id.* ¶ 15.)

2

Raffaele told Plaintiff to "keep [his] appointments" and that she "hope[d] this [made him] feel better." (*Id.* ¶ 16.) To protest Raffaele's actions, Plaintiff went on a hunger strike on July 28, 2017. (*Id.* ¶ 19.) Plaintiff was discriminated against, treated unfairly and differently when Raffaele retaliated against him for filing grievances and lawsuits. (*Id.*) Raffaele also committed an unhygienic act against Plaintiff by giving him "unsafe water to drink" in order to take "needless medication" which caused Plaintiff to have "upset stomach, loss of appetite, nausea, fear, high levels of stress, worrying, depression, anxiety[,] and emotional and psychological injury." (*Id.*)

On August 7, 2017, Plaintiff was released from the infirmary without seeing his medical provider. (*Id.* ¶ 20.) Two days later, Plaintiff was confined to his cell for a "72 hour cell confinement investigation." (*Id.* ¶ 21.) On August 14, 2017, while still on a hunger strike, Plaintiff was denied the opportunity to see a doctor. (*Id.* ¶ 22.) On August 18, 2017, while his hunger strike continued, a sergeant came to Plaintiff's cell and "dismiss[ed] [P]laintiff['s] hunger strike and issues and concerns then abruptly [left.]" (*Id.* ¶ 23.) On August 22, 2017, while his hunger strike went on, Plaintiff was denied his medical provider callout. (*Id.* ¶ 24.) On August 24, 2017, while still hunger striking, Plaintiff was denied access to a doctor at emergency sickcall and was subsequently placed in handcuffs by a prison guard, without justification and provocation. (*Id.* ¶ 25.) The handcuffs were placed behind Plaintiff's back too tightly and he reinjured his wrists. (*Id.*) Plaintiff also was "push[ed] and shov[ed] . . . around as [he] suffered fatigue, malnutrition, dizziness walking with [an] escort to PSU (the Psychiatric Satellite Unit.)" (*Id.*) At PSU, a licensed clinical social worker "refused to help [P]laintiff" and she "took no notes" and Plaintiff's "mental health chart was not available." (*Id.* ¶ 26.) While at the PSU, Hennessy "laughed at [P]laintiff the whole time [as] she responded to [P]laintiff's problems."

3

(*Id.* ¶ 27.)  On August 25, 2017, while still on his hunger strike, Plaintiff was seen at sickcall and denied the chance to be seen by a doctor and to visit the Mental Health Unit.  (*Id.* ¶ 28.)  While Plaintiff continued his hunger strike, he was housed at the Green Haven infirmary and was denied his clothes.  (*Id.* ¶ 29.)  Instead, Plaintiff was "treated like a slave" and "told to wear a sack as clothing in an isolation cell."  (*Id.*)  As a result of retaliation by Raffaele, Plaintiff could not meet filing court deadlines.  (*Id.* ¶ 33.)  Dr. Bentivegna "was deliberate[ly] indifferent when he failed to provide medical [care] and/or Ensure to combat and alleviate [P]laintiff's severe weight loss, loss of appetite, nausea, fear, upset stomach, high levels of stress, worrying, depression, anxiety and malnutrition . . . ."  (*Id.* ¶ 34.)  Hennessy knew of Plaintiff's on-going hunger strikes and disregarded the serious risk to Plaintiff's mental health and medical condition with deliberate indifference.  (*Id.* ¶ 35.)  When Plaintiff requested mental health therapy, Hennessy laughed at him.  (*Id.*)

B.  Procedural History

Plaintiff filed his Complaint on March 17, 2020, (*see* Compl.), and Plaintiff's request to proceed in forma pauperis ("IFP") was granted on May 8, 2020, (*see* Dkt. No. 6).  On May 19, 2020, Judge Louis L. Stanton dismissed the Complaint.  (Order of Dismissal ("Dismissal") Dkt. No. 7.)  Judge Stanton granted Plaintiff leave to amend the Complaint within 30 days of his Dismissal.  (*Id.*)  On June 18, 2020, Plaintiff filed an Amended Complaint.  (Dkt. No. 8.)  On July 16, 2020, the case was transferred to this Court.  (*See* Dkt. (entry for July 16, 2020).)  On October 19, 2020, Defendants wrote a letter to the Court requesting that Plaintiff file a complete copy of his Amended Complaint because two pages were missing.  (Dkt. No. 16.)  The Court granted Defendants' request and ordered that Plaintiff file a complete Amended Complaint by November 2, 2020.  (Dkt. No. 17.)  On October 22, 2020, Plaintiff re-filed a complete Amended

Complaint.  (Dkt. No. 18.)  On December 16, 2020, Defendants filed their Motion To Dismiss. (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. To Dismiss the Am. Compl. ("Defs.' Mem.") (Dkt. No. 23).)  On February 3, 2021, Defendants wrote a Letter to the Court requesting that the Court deem the Motion fully submitted since Plaintiff had not filed an Opposition that was due no later than January 16, 2021.  (*See* Dkt. No. 25.)  The Court granted Defendants' request and deemed the Motion fully submitted.  (*See* Dkt. No. 26.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.  But where

the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions.").

      "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d

306, 317 (S.D.N.Y. 2016) (same).  Where, as here, a plaintiff proceeds pro se, the court must

"construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it]

suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).

However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from

compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980

F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga*

*County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform

themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F.*, 199 F.3d at 107 (citation and quotation marks omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B.  Analysis

1.  Deliberate Indifference to Medical Needs

A claim for deliberate indifference to medical needs requires a plaintiff to allege, first, that the "alleged deprivation of adequate medical care [is] sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted). Analyzing this objective requirement involves two inquiries: (i) "whether the prisoner was actually deprived of adequate medical care," and (ii) "whether the inadequacy in medical care is sufficiently serious," which, in turn, "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit

7

has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).

The second element of a claim for deliberate indifference to medical needs requires the plaintiff to show that prison officials were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Importantly, neither "mere negligence" nor "mere disagreement over the proper treatment . . . give[s] rise to an Eighth Amendment violation." *Bryant v. Capra*, No. 18-CV-10198, 2020 WL 508843, at *9 (S.D.N.Y. Jan. 31, 2020) (citations and quotation marks omitted).

Plaintiff complains that Dr. Bentivegna was deliberately indifferent when he failed to provide medical care or Ensure to combat and alleviate Plaintiffs "severe weight loss, loss of appetite, nausea, fear, upset stomach, high levels of stress, worrying, depression, anxiety[,] and malnutrition." (AC ¶ 34.) Such allegations fail, as a matter of law, to satisfy the objective requirement that Plaintiff suffered from a "condition of urgency . . . that may produce death, degeneration, or extreme pain" or that "threatened his health or safety." *See Torres v. Aramark Food*, No. 14-CV-7498, 2015 WL 9077472, at *7–8 (S.D.N.Y. Dec. 16, 2015); *see also id.* (finding that the plaintiff's complaints of headaches, stress, and anguish were insufficient to satisfy the objective prong of an Eighth Amendment claim); *Mitchell v. Sepowski*, No. 13-CV-05159, 2014 WL 4792101, at *4 (S.D.N.Y. Sept. 25, 2014) ("Plaintiff's claims of inadequate medical care fail . . . given that his alleged symptoms of headaches, upset stomach, sore throat and vomiting have been uniformly deemed by courts in this Circuit as insufficient for Eighth

8

Amendment purposes."); *Pagan v. Westchester County*, No. 12-CV-7669, 2014 WL 982876, at

\*17 (S.D.N.Y. Mar. 12, 2014) (holding that allegations of conduct that caused, "*inter alia*, severe

stomach pain, nausea, vomiting, diarrhea, weight loss, and headaches [we]re insufficient to state

a claim of serious deprivation"), *on reconsideration*, 2015 WL 337403 (S.D.N.Y. Jan. 26, 2015);

*Read v. Town of Suffern Police Dep't*, No. 10-CV-9042, 2013 WL 3193413, at \*6 n.5 (S.D.N.Y.

June 25, 2013) (noting that the "[p]laintiff's anxiety attacks were likely not sufficiently serious to

satisfy the objective component of the 'deliberate indifference' analysis"), *appeal dismissed*, No.

13-3065 (2d Cir. Oct. 20, 2013); *Loadholt v. Lape*, No. 09-CV-0658, 2011 WL 1135934, at \*6

(N.D.N.Y. Mar. 3, 2011) ("Plaintiff does not allege how much weight he lost, if that weight loss

was dangerous to his health, or why he lost the weight. . . . Therefore, there are no allegations in

the pleading to 'conclude that plaintiff's weight loss concerns represented a condition of

urgency . . . to implicate an Eighth Amendment violation.'" (quoting *Evans v. Albany Cnty.*

*Corr. Facility*, No. 05-CV-1400, 2009 WL 1401645, at \*10 (N.D.N.Y. May 14, 2009))), *report*

*and recommendation adopted*, No. 09-CV-0658, 2011 WL 1114253 (N.D.N.Y. Mar. 25, 2011);

*Cruz v. Hillman*, No. 01-CV-4169, 2002 WL 31045864, at \*8 (S.D.N.Y. May 16, 2002) (holding

that plaintiff's experience of "much mental anguish and a great deal of suffering from worry and

grief" was not objectively sufficiently serious to make an Eighth Amendment claim).  Plaintiff's

allegations regarding Dr. Bentivegna's medical care do not amount to the level required for an

Eighth Amendment violation.[2]  Further, "[i]t is well-established that mere disagreement over the

---

[2] A nearly identical claim was dismissed by Judge Stanton because he reasoned that even
had Plaintiff alleged an objectively serious medical need, which he has not, Plaintiff's allegation
that Dr. Bentivegna discontinued Plaintiff's prescription of Ensure does not plausibly establish
that Dr. Bentivegna was deliberately indifferent to Plaintiff's serious medical needs.  (Dismissal
at 3.)

proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Brown v. Montone*, No. 17-CV-4618, 2018 WL 2976023, at *6 (S.D.N.Y. June 13, 2018) (holding that following one course of treatment over another is not a basis for an Eighth Amendment claim but instead reflects disagreement over the proper treatment); *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference."); *Polletta v. Farinella*, No. 11-CV-660, 2012 WL 6115101, at *2 (D. Conn. Dec. 10, 2012) ("That [the] [p]laintiff did not receive the treatment of his choice . . . is insufficient to state a claim for deliberate indifference."). Plaintiff's allegations only suggest a disagreement with Dr. Bentivegna over whether Ensure was the proper course of treatment for him and such allegations are simply insufficient to support a claim of deliberate indifference. Accordingly, Plaintiff's deliberate indifference claim against Dr. Bentivegna is dismissed.

Similarly, Plaintiff's claim of deliberate indifference against Hennessy fails. Plaintiff alleges that he requested mental health therapy and that even though Hennessy knew of his ongoing hunger strike, she disregarded the serious risk to Plaintiff's mental health and laughed at him in response to his request for mental health therapy. (AC ¶ 35.) These allegations, even if they portray unprofessional conduct, are insufficient to demonstrate deliberate indifference to Plaintiff. *See Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *12 (S.D.N.Y. June 23, 2010) ("Laughter, verbal harassment or even spitting by prison officials, when 'unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right." (quoting *Aziz Zarif Shabazz v. Pico*,

994 F. Supp. 460, 475 (S.D.N.Y. 1998))); *Orraca v. Pilatich*, No. 05-CV-1305, 2008 WL 4443274, at *5 (N.D.N.Y. Sept. 26, 2008) (noting that while laughter by two correctional officers might be "unprofessional and unkind," it does not amount to the sort of conduct for which defendants could be liable under the Constitution); *accord Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997) (finding that a prison sergeant's laughter at plaintiff's complaint about his cellmate did not amount to deliberate indifferent); *Sampay v. Griffin*, No. 06-CV-360, 2007 WL 1662761, at *2 (M.D. La. May 8, 2007) (finding prison doctor's laughter at prisoner who stated he was in pain was not, in and of itself, deliberate indifference); *Owens v. Cuyler*, 81-CV-1722, 1989 U.S. Dist. LEXIS 8071, at *12 (E.D. Pa. July 14, 1989) ("While [the doctor's] alleged laughter when the plaintiff showed him his medical ailment may seem inappropriate 'bedside manner' on his part, this shortcoming does not rise to the level of deliberate indifference which could constitute a constitutional deprivation.").[3]

### 2.  Retaliation Claim

A plaintiff asserting a First Amendment retaliation claim must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).  "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed district courts to "approach prisoner retaliation claims with

---

[3] Judge Stanton rejected a very similar claim from Plaintiff's original Complaint, finding that Plaintiff failed to allege sufficient facts to suggest that Hennessy or any of the individual defendants was deliberately indifferent to Plaintiff's serious medical or mental health needs. (Dismissal at 8–9.)

skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation and quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (quotation marks omitted)).  Accordingly, First Amendment retaliation claims brought by prisoners must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (quotation marks omitted).

Plaintiff's filing of a grievance or a lawsuit is protected conduct and therefore meets the first prong of the inquiry.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."); *see also Dolan*, 794 F.3d at 294 ("[I]t is well established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.'" (quoting *Graham*, 89 F.3d at 80)); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988) ("[I]ntentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that [§] 1983 is intended to remedy." (quotation marks and alterations omitted)); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (noting that a "prisoner's filing of a grievance" and "the filing of a lawsuit" are "constitutionally protected activit[ies]").

Although Plaintiff has adequately alleged that he engaged in protected conduct, he has failed to allege that Defendants took an "adverse action" against him in retaliation for that conduct.  An action qualifies as an "adverse action" for purposes of a retaliation claim only if the

12

action would "deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process and the courts." *Gill*, 389 F.3d at 384; *see also Muhammad v. Jenkins*, No. 12-CV-8525, 2013 WL 5225573, at *9 (S.D.N.Y. Sept. 13, 2013) (same). Here, Plaintiff's retaliation claim rests on that fact the allegations that Raffaele gave him "needless medication" and "unsafe water to drink" after his requests for medical or mental health treatment and after he filed grievances and lawsuits. (AC ¶ 19.) Plaintiff further claims that because of Raffaele's conduct, he could not meet court filing deadlines. (*Id.*) However, these wholly conclusory allegations are insufficient to establish a casual nexus between Plaintiff's protected conduct and the alleged retaliation by Raffaele. *Gill*, 389 F.3d at 380 (explaining that there must be a causal connection between the protected speech and the adverse action.); *Wisdom v. Griffin*, No. 17-CV-4837, 2019 WL 452057, at *6 (S.D.N.Y. Feb. 4, 2019) ("[A] prisoner pursuing a retaliation claim must not rest on 'wholly conclusory' allegations, but rather must allege 'specific and detailed' supporting facts." (quoting *Dolan*, 794 F.3d at 295)); *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 511 (S.D.N.Y. 2012) (holding that "repeatedly assert[ing] that [the plaintiff's] perceived mistreatment is a result of retaliatory animus on the part of the defendants," without "any 'specific and detailed factual allegations to support that assertion, '" is insufficient to establish a causal connection (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000))). Plaintiff does not point to any missed deadlines that resulted in the loss or rejection of a meritorious legal claim or demonstrate a causal connection between Plaintiff's protected speech or conduct and Raffaele's adverse action against him. Further, Plaintiff does not offer specific allegations that establish a temporal connection between his conduct and Raffaele's purported retaliatory conduct. To satisfy the final prong of a First Amendment retaliation claim, "temporal proximity alone is not enough to establish a causal connection." *Rodgers v. Gumbus*, No. 19-

13

CV-419, 2021 WL 2169121, at *7 (N.D.N.Y. May 10, 2021), *report and recommendation adopted*, No. 19-CV-419, 2021 WL 2156468 (N.D.N.Y. May 27, 2021). "The Second Circuit has held that where 'timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise.'" *Thomas v. Waugh*, No. 13-CV-0321, 2015 WL 5750945, at *15 (N.D.N.Y. Sept. 30, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)); *see also id.* at *4, *15 (adopting recommendation and dismissing retaliation claim because temporal proximity alone is insufficient to plausibly allege a causal connection between the plaintiff's protected activity and the defendant's alleged retaliatory conduct). Because Plaintiff's Amended Complaint is devoid of any facts as to the timing of his protected speech and Raffaele's supposed adverse action, he fails to plausibly allege a retaliation claim. Accordingly, Plaintiff's retaliation claim against Raffaele is dismissed.[4]

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss.  Because this is the second adjudication of Plaintiff's claims on the merits, the claims are dismissed with prejudice.[5]

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 23), to mail a copy of this Opinion & Order to Plaintiff, and close this case.

---

[4] Judge Stanton also rejected an almost verbatim retaliation claim previously alleged by Plaintiff.  Judge Stanton pointed out that Plaintiff had failed to allege any facts to suggest that there was a causal connection between his protected speech and Raffaele's purported adverse action against him in giving him "needless medication" and "unsafe water."  (Dismissal at 10).

[5] Because this is Plaintiff's second attempt at filing a complaint, the dismissal is with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with prejudice

SO ORDERED.

Dated:    September 8, 2021
          White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (citation, alteration, and quotation marks omitted)).